IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-00413-WYD-MEH

LIDIA BARRERA and
TELESFORO BARRERA, SR.,

       Plaintiffs,

v.

AMERICAN NATIONAL PROPERTY AND CASUALTY COMPANY,

       Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge.**

Before the Court is Plaintiffs' Motion to Amend the Complaint to Add a Claim for Exemplary Damages [filed August 27, 2012; docket #31]. The motion has been referred to this Court for recommendation. (Docket #32.) Upon review of the initial briefs, the Court ordered the parties to submit additional evidence and argument regarding certain issues. (*See* dockets ##53, 54, 55, 58, 60, 61, 62.) Additionally, the Court held an evidentiary hearing and heard oral argument on November 5, 2012. (Docket #64.) In consideration of the entire record and for the reasons set forth below, the Court RECOMMENDS that Plaintiffs' Motion be **denied**.[1]

---

[1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140,

## BACKGROUND

### I.     Findings of Fact

Between August 2006 and March 2011, Plaintiffs applied for and received fourteen different insurance policies with Defendant. (Dockets ##54-1 through 54-8.)   The first five applications signed by Plaintiff Lidia Barrera contain a "felony question" which asks whether Plaintiff Lidia Barrera or any member of her household have ever been convicted of a felony or drug possession. (Dockets ##54-1 at 19, 54-12 at 5, 54-17 at 35, 54-18 at 30, and 54-19 at 37.)  Next to each felony question is a statement instructing the insurance agent "not to bind" if the answer is affirmative. (*Id.*)  In addition to the first five applications, five additional applications also contain  the felony question with a similar statement regarding its effect on coverage.  (Dockets ##54-23 at 41, 54-25 at 33, 54-26 at 33, 54-27 at 36, and 54-28 at 36.)  Four of the fourteen applications, referred to by Defendant as electronic or "short-form" applications, do not contain a felony question or any instruction pertaining thereto.  (Dockets ## 54-20, 54-21, 54-22, and 54-24.)  Although the felony question does not appear on the face of the four electronic applications, Defendant presented testimony from Kelli Anderson indicating that Robert Edgin, the insurance agent who worked with Plaintiffs on each of the fourteen insurance policies, "always asked the underwriting questions, including the question regarding whether anyone in the insureds' household had been convicted of a felony." (Docket #60-2 at ¶ 3.)  In support of this statement, Defendant provided "screen shots" revealing the application process for each of the four policies at issue in this case.  (Dockets ## 60-3 though 60-6.)  Each one contains the felony question. (*See id.*)

The records unambiguously reveal that each time the felony question was asked, Plaintiff Lidia Barrera answered "no."  However, Ms. Barrera later admitted that this information was

_____

155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).

incorrect, and that her husband, Plaintiff Telesforo Barrera Sr., was convicted of a felony in 1999. (*See* docket #52-6, at 2.)  When questioned as to why she provided false information, Mrs. Barrera speculated that she "probably didn't even read it. . .[she] just signed it."  (*Id*.)  Though Mr. Edgin does not specifically recall preparing the Plaintiffs' applications, he testified that his general practice is to input presumptive answers to certain questions and then go through the form section by section to confirm that the information is correct.  (Docket #55-1, 35.)  With each section, Mr. Edgin turns the form around so that it is facing the insureds.  (*Id*.)  Once he confirms that the information in that section is correct, Mr. Edgin moves on to the next section.  (*Id*.)

Defendant discovered Plaintiffs' misrepresentations regarding the felony question following two fires that occurred between March 14, 2011 and March 15, 2011, at a home Plaintiffs owned and rented to their son. In addition to the home itself, two vehicle were also damaged in the fire. (*See* docket #1 at 5-6.)   Plaintiffs asserted coverage for the losses under four of the fourteen policies held with Defendant.  (*Id*. at 6.)  Of the four policies, three of the underlying applications contained the felony question on their face.  The fourth was issued based on an electronic or short-form application.

During the course of its investigation, Defendant hired attorney Anthony DeMaria to determine whether or not Plaintiffs' misrepresentations provided a valid basis for recision.   Mr. DeMaria deposed both Plaintiffs regarding their policies and found that recision was appropriate under the leading Colorado cases governing misrepresentations.  (Docket #55-10, 2-4.)  Mr. DeMaria reported his findings to Kelli Anderson and offered some proposed language regarding the denial of coverage. (Docket #62-1 at 7.) In the course of their discussions, Mr. DeMaria informed Ms. Anderson that not all of the policies contained the facial misrepresentation.  (*Id*. at 8.)  However, Mr. DeMaria advised Mr. Anderson that recision of all policies was still appropriate because

Plaintiffs' initial misrepresentations "tainted" their subsequent applications.  (*Id*.)  Upon consideration of Mr. DeMaria's representations,  Ms. Anderson determined that recision was appropriate and, using some of the language proposed by Mr. DeMaria, issued a denial letter from Defendant to Plaintiffs to that effect.  (*Id*. at 7.)

## II.     Procedural History

Plaintiffs initiated this action on January 10, 2012, in El Paso County District Court, and Defendant removed the action on February 16, 2012.  (Docket #1.)  After the parties exchanged initial disclosures, as required by Colo. Rev. Stat. § 13-21-102(1.5)(a), Plaintiffs filed the present motion seeking to add a claim for exemplary damages.

Because Plaintiffs' arguments have evolved over the course of the briefing, a summary of each party's positions may be useful.  In their motion, Plaintiffs contend that Defendant's decision to rescind based on the felony question is sufficient to support a claim for exemplary damages.  In particular, Plaintiffs noted that the question was not asked on all applications, including an application for auto coverage regarding a vehicle damaged in the fire.  Plaintiffs also took issue with Mr. Edgin's practice of filling out policies himself and then asking the insured to verify the information.  Based on these facts, Plaintiffs argued that exemplary damages are appropriate.

In its response, Defendant asserted that under its corporate policy, one material misrepresentation taints the subsequent policies of a particular insured and justifies rescission of them all.  Defendant also argued that it is reasonable to rely on the information in an initial long-form application in subsequently processing policies utilizing only a short-form or electronic application.  Finally, Defendant asserted that it sought a legal opinion from coverage counsel concerning whether it had the legal authority to rescind all the insurance contacts, and that opinion

responded in the affirmative.  Defendant argued that it had the right to rely on such legal advice and should not be liable for exemplary damages in so doing.

After a brief extension of time, Plaintiffs filed a reply challenging the factual basis for Defendant's purported "long-form/short-form" policy.  Upon review of the incomplete exhibits provided by Plaintiffs, the Court determined that an evidentiary hearing was necessary to clarify several questions regarding Defendant's practices and Plaintiffs' applications. Thus, the Court directed the parties to submit several categories of documents by October 26, 2012, and to prepare testimony, if needed, for a hearing on November 5, 2012.  (Docket #53.)  Additionally, in light of the parties' collective failure to address significant case law on the question, the Court ordered supplemental briefing on the effect of *Silver v. Colorado Casualty Insurance Company*, 219 P.3d 324, 330 (Colo. App. 2009).  (*Id.*)

## APPLICABLE LEGAL STANDARDS

While federal courts sitting in diversity cases ordinarily apply federal procedural law and state substantive law, the distinction is not always so clear.  *See Jones v. Krautheim*, 208 F. Supp. 2d 1173, 1174-75 (D. Colo. 2002) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Guaranty Trust Co. of New York v. York*, 326 U.S. 99 (1945); *Byrd v. Blue Ridge Rural Elec. Coop.*, 356 U.S. 525 (1958); and *Hanna v. Plumer*, 380 U.S. 460 (1965)).  The court in *Krautheim, supra*, aptly summarized the current two-part test for deciding whether a state law with a procedural impact should apply in federal diversity cases:

> The *Hanna* test requires a court to first determine whether the state law in question directly conflicts with a federal rule of civil procedure. If there is a direct conflict, the federal procedural rule applies and the state provision does not. If there is no direct conflict between the state statute and a federal rule, then a court must consider *Erie*'s twin goals of discouraging forum shopping and avoiding inequitable administration of the law.

208 F. Supp. 2d at 1175.  In light of this test and the reasoning in *Krautheim*, courts in this district

have determined that Colo. Rev. Stat. § 13-21-102 does not conflict with the Federal Rules of Civil Procedure, and that *Erie*'s twin aims are best satisfied by applying the Colorado statute. *American Economy Ins. Co. v. William Schoolcraft, M.D., P.C.*, 05-cv-01870-LTB-BNB, 2007 WL 160951, at *1 (D. Colo. Jan. 17, 2007); *see also Hartshorn Properties, LLC v. BNSF Ry. Co*., 06-cv-00663-LTB-CBS, 2006 WL 3618292 (D. Colo. Dec. 7, 2006). This Court is likewise persuaded that Colo. Rev. Stat. § 13-21-102 governs Plaintiff's present motion to add a claim for exemplary damages.

In a civil action under Colorado law in which damages are assessed by a jury, a party may recover exemplary damages when "the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct[.]" Colo. Rev. Stat. § 13-21-102(1)(a). The statute defines "willful and wanton conduct" as "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or the rights and safety of others, particularly the plaintiff." Colo. Rev. Stat. § 13-21-102(1)(b). Though a party may not assert a claim for exemplary damages in his or her original pleading, Colo. Rev. Stat. § 13-21-102(1.5)(a) provides that "a claim for exemplary damages . . . may be allowed by amendment to the pleadings only after the exchange of initial disclosures [pursuant to Colo. R. Civ. P. 26] and the plaintiff establishes prima facie proof of a triable issue." The Colorado Supreme Court has observed that requiring a plaintiff to provide prima facie evidence of an exemplary damages claim is "a lenient standard," and that "[a] plaintiff should have an opportunity to test the merits of any claim for relief that is supported by the underlying facts of a case." *Stamp v. Vail Corp.*, 172 P.3d 437, 450 (Colo. 2007) (interpreting the exemplary damages provisions of Colo. Rev. Stat. § 13-21-203).

In this case, there is no dispute that parties have exchanged initial disclosures in accordance

with Colo. R. Civ. P. 26.[2]  Thus, the only remaining question is whether Plaintiffs have established

prima facie proof of a triable issue with respect to exemplary damages.  The parties' respective

contentions are referenced above.

> When an insured sues his or her insurer for bad faith breach of an insurance contract,
> the insured must prove that (1) the insurer acted unreasonably under the
> circumstances, and (2) the insurer either knowingly or recklessly disregarded the
> validity of the insured's claim.

*Sanderson v. American Family Mut. Ins. Co.*, 251 P.3d 1213, 1217 (Colo. App. 2010).  "In assessing

a bad faith claim, the reasonableness of an insurer's conduct is measured objectively based on

industry standards."  *Zolman v. Pinnacol Assurance*, 261 P.3d 490, 496 (Colo. App. 2011). "Under

Colorado law, it is reasonable for an insurer to challenge claims that are 'fairly debatable.'"

*Schuessler v. Wolter*, --- P.3d ----, 2012 WL 1881002, at *7 (Colo. App. May 24, 2012) (quoting

*Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1275 (Colo. 1985)).

## DISCUSSION

Upon review of the briefs and in consideration of the arguments presented at the November

5, 2012 evidentiary hearing, the Court sees three issues relevant to the determination of Plaintiffs'

motion: (1) the applicability of the *Wich* rule articulated in *Silver*;  (2) the effect of Plaintiffs' initial

misrepresentations on subsequent policies; and (3) the effect of coverage counsel on Defendant's

liability for exemplary damages.

## I.    *Applicable Precedent Regarding Recision*

There has been considerable debate among the parties regarding the appropriate legal

---

[2]There is an issue as far as timeliness of the current motion.  In the Scheduling Order the
Court set a deadline of August 10, 2012 for the filing of a motion under Colo. Rev. Stat. § 13-21-
102(a) to request exemplary damages.  On August 13, 2012, at the request of the Plaintiffs, the Court
extended that date to August 26, 2012.  The motion was filed August 27, 2012.  Based on my
conviction that, on the merits, the requested amendment should be denied, the Court will not rely
on the procedural lateness of the motion.

standard for determining whether Defendant was entitled to rescind Plaintiffs' policies based on the erroneous response to the felony question.  Though the Court recognizes that whether or not a recision was actually warranted is question reserved for a later date, the applicable law is relevant insofar as it affects the reasonableness of Defendant's decision, and thus, the availability of exemplary damages.

All parties agree that an insurer claiming recision based on an alleged misrepresentation by the applicant must prove that:

> (1) the applicant made a false statement of fact or concealed a fact in his application for insurance; (2) the applicant knowingly made the false statement or knowingly concealed the fact; (3) the false statement of fact or the concealed fact materially affected either the acceptance of the risk or the hazard assumed by the insurer; (4) the insurer was ignorant of the false statement of fact or concealment of fact and is not chargeable with knowledge of the fact; [and] (5) the insurer relied, to its detriment, on the false statement of fact or concealment of fact in issuing the policy.

*Hollinger v. Mut. Benefit Life Ins. Co.*, 560 P.2d 824, 827 (Colo. 1997).  In addition to this broad test, the Colorado Court of Appeals has recognized more specific rules depending on the circumstances of the misrepresentation.  In cases where the applicant acts in good faith to provide truthful information but the agent enters false information, courts have long held that the insurance company is estopped from rescinding based on the misrepresentation. *Silver*, 219 P.3d at 329 (citing *New York Life Ins. Co. v. Fukushima*, 220 P. 994, 995-96 (Colo. 1923)).  This is known as the *Van Fleet* rule.  *Id.* (citing *Pac. Mut. Life Ins. Co. v. Van Fleet*, 107 P.2d 1087 (Colo. 1910)).  Conversely, if "the applicant gave the insurer's agent false information, or did not give the agent any information, and the agent inserted false information into the insurance application . . . the insurer may rescind (or otherwise avoid liability on) the insurance contract based on any material misrepresentations contained therein."  *Id.* at 330 (citing, among other cases, *Sun Fire Office v. Wich*, 39 P. 587, 590 (Colo. App. 1984)).  This principle, known as the *Wich* rule, "is based on the

rationale that in such circumstances the applicant is not entitled to assume that the agent included correct information in the application, and . . . the applicant's culpability outweighs that of the agent." *Id*. at 330.

Plaintiffs ask the Court to rely on the Supreme Court's 1923 decision in *Fukushima* in determining the reasonableness of Defendant's decision. Although the *Silver* court cited *Fukushima*, Plaintiffs contend that *Silver* misapplies the law and is therefore invalid.  In particular, Plaintiffs believe statutory changes have eroded the foundations of *Wich* and that *Fukushima* prohibits an insurance company from rescinding based on a misrepresentation when the question was not propounded to the insured.   Under *Fukushima*, Plaintiffs contend they are entitled to exemplary damages.  Plaintiffs' reliance on *Fukushima* and subsequent rejection of *Silver* are, in the Court's view, mistaken.

First, *Fukushima* is distinguishable from this case in that the plaintiff in *Fukushima* could not read or write English and, thus, had no way of verifying whether responses submitted to the insurance company on his behalf were accurate. 220 P. at 238.  The *Fukushima* court underscored the significance of this fact by noting that its conclusion was "especially [] true when. . .the insured could have had no knowledge of the contents of the document he was signing save what he obtained from the agents of the company."  *Id*. at 241.  In this case, Plaintiffs do not assert that they were denied an opportunity to review the applications or that they were otherwise unable to understand the representations contained therein.  To the contrary, Plaintiff Lidia Barrera admits that she simply did not read them.  (Docket #52-2 at 6.)

Second, in the absence of any case law overruling or challenging the relevant portions of *Silver*, the Court finds that it is sound precedent on which Defendant could have reasonably and fairly relied in determining whether it could rescind Plaintiffs' policies containing the

misrepresentations.  If not entirely reasonable, Plaintiffs' attempt to challenge the effect of *Silver* and *Wich* indicates that the validity of the recision under these cases was, at a minimum, "fairly debatable."  *See Savio*, 706 P.2d at 1275.

## II.     Effect of *Silver* on Exemplary Damages

If, as Plaintiffs represent, they gave no information to Mr. Edgin and Mr. Edgin filled in false information, Defendant was entitled to rescind or avoid liability on the various insurance contracts based on the material representations contained therein. *See Silver*, 219 P.3d at 330.  *Silver* makes clear that Plaintiffs' failure to read the documents before signing them is no defense.  *Id.* (observing the "number of decisions of the Colorado appellate courts holding that a person who signs a document is bound by its contents, even if he claims not to have read it. *E.g., Rasmussen v. Freehling,* 159 Colo. 414, 417, 412 P.2d 217, 219 (1966); *Leverage Leasing Co. v. Smith,* 143 P.3d 1164, 1168 (Colo. App. 2006).")  *Id.*

Because *Silver* does not explicitly address the effect of Plaintiffs' prior misrepresentations on subsequently issued policies, the Court engaged in substantial effort to determine whether there was evidence to support a claim for exemplary damages on this basis.  At the Court's request, Defendant presented (1) all insurance policies issued by Defendant to Plaintiffs; (2) all applications used by Defendant in determining Plaintiffs' insurance coverage for the aforementioned policies; (3)  testimony concerning Defendant's policies, practices, and procedures for using long-form and short- form applications, including whether information gathered in connection with one form of coverage (i.e. home owner's insurance) may be used to determine eligibility for a different form of coverage (i.e. automobile insurance); (4) complete transcripts from the depositions of Robert F. Edgin and Michele Cannon; and (5) evidence regarding all other disputed factual issues raised in Plaintiffs' reply brief.   In addition, the Court reviewed similar evidence submitted by Plaintiffs.

Upon review of the evidence presented, the Court finds the following facts persuasive. First, Ms. Anderson testified that she spoke with Mr. Edgin about his practices prior to rescinding the Plaintiffs' policies. Based on these conversations, it was Ms. Anderson's understanding that Mr. Edgin or a member of his staff "always asked the underwriting questions, including the question regarding whether anyone in the insureds' household had been convicted of a felony or drug possession." (Docket #60-2 at ¶¶ 2-3.) She further testified that any time an electronic or short-form application is issued, the agent still forwards the answers to the underwriting questions to Defendant even though they do not appear on the face of the application. (*Id*. at ¶ 4.) As evidence of this statement, Defendant provides the entire transmitted application for each of the four policies at issue in this case. Each contains the felony question. (*See* dockets ##60-3 at 16, 60-4 at 15, 60-5 at 17, 60-6 at 13.) In light of this evidence, it appears to the Court that Defendant always considers the felony question in deciding whether to issue an insurance policy to an applicant, even if the question does not appear on the face of the electronic or short-form application. Because Defendant has presented ample testimony and documents indicating that it would not have offered coverage for any of the policies if it had known of Mr. Barrera's felony conviction, the Court cannot find that Defendant acted unreasonably in rescinding subsequent policies based on Plaintiffs' multiple previous misrepresentations to the contrary. Remembering that validity of the recision is not before it, the Court finds only that Plaintiffs have not presented sufficient evidence to create a triable issue of exemplary damages.

## III.    Effect of Coverage Counsel

Although the Court could not find a Colorado opinion on point, in the context of insurance bad faith claims, every other jurisdiction for which the Court found a relevant case attaches significant importance to advice of counsel obtained by the insurer prior to making a decision that

adversely affects its insured.  Although some jurisdictions give this fact more weight than others, all of them consider it a defense to exemplary damages.  *E.g., State Farm Mut. Auto. Ins. Co. v. Super. Ct.,* 228 Cal. App. 3d 721, 725, 279 Cal. Rptr. 116 (1991) (an insurance company's good faith reliance on advice of counsel negates allegations of bad faith); *Szumigala v. Nationwide Mut. Ins. Co.,* 853 F.2d 274, 282 (5th Cir. 1988) ("good-faith reliance upon advice of counsel may prevent imposition of punitive damages"); *Western Line Consol. School Dist. v. Continental Cas. Co.*, 632 F. Supp. 295, 304 (N.D. Miss. 1986) ("This court is persuaded that good faith reliance on the advice of counsel is in fact a defense to an award of punitive damages . . . ."); *Chavers v. National Sec. Fire & Cas. Co.*, 405 So.2d 1, 8 (Ala. 1981) (advice of counsel, while "not necessarily an absolute defense," is relevant to the bad faith issue); *Cotton States Mut. Ins. Co. v. Trevethan*, 390 So.2d 724, 728 (Fla. App. 1980) ("[W]e now hold that reliance on the advice of counsel is similarly evidence to be considered on the issue of bad faith . . . .).  Here, the Court finds that Defendant's reliance on advice of counsel, in light of the objectively reasonable basis for rescission of the policies at issue, provides the nail in the coffin for a claim of exemplary damages.

Finally, Defendant argues that Plaintiffs had all the information they needed in moving to add a claim for exemplary damages early in this case, and by waiting to file until the end of the discovery period, Plaintiffs' motion is untimely.  Because an attorney may reasonably expect discovery to produce additional evidence on an issue such as this, the Court does not agree with Defendant's argument.

## CONCLUSION

Though the Court is extremely hesitant to deny a plaintiff the opportunity to present a claim to a jury, especially when the Colorado Supreme Court describes the standard as lenient, it finds that the evidence produced is simply too thin to permit a claim for exemplary damages. For the  reasons

described above and based on the entire record herein, the Court  RECOMMENDS that Plaintiffs'

Motion to Amend the Complaint to Add a Claim for Exemplary Damages [filed August 27, 2012;

docket #31] be **denied**.

Dated at Denver, Colorado, this 15th day of November, 2012.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

13